# In the United States Court of Federal Claims

No. 19-270T
Filed: February 21, 2020

|  |  |
|---|---|
| **ALAN C. DIXON,** | |
| *Plaintiff,* | Keywords: RCFC 12(b)(1); Amended Tax Return; Tax Refund Claim; Signature Requirement; *Chevron* Deference; *Kisor* Deference; Waiver |
| **v.** | |
| **UNITED STATES,** | |
| *Defendant.* | |

*Kathryn Magan*, Magan Law, PLLC, Dallas, TX, for the plaintiff.

*Courtney M. Hutson*, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, Washington, D.C., for the defendant, with whom was *Mary M. Abate*, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, Washington, D.C., of counsel.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, Alan C. Dixon, seeks a refund for certain foreign taxes collected in tax years 2013 and 2014. The defendant, the United States, acting through the Internal Revenue Service (the "IRS"), moved to dismiss because Mr. Dixon did not sign his claims for a refund under penalties of perjury or designate signing authority to another through a valid power of attorney. Because a signature under penalties of perjury is a jurisdictional requirement in tax refund suits, the Court grants the defendant's motion and dismisses Mr. Dixon's complaint.

## I.      BACKGROUND

### A.      Facts

The plaintiff is an Australian national who resides in the United States. He seeks a refund of a portion of his federal income taxes for the 2013 and 2014 tax years because he claims he was entitled to foreign tax credits on taxes paid to Australia by an Australian corporation, Dixon Advisory Group Proprietary Limited, in which he has an interest. For the 2013 tax year, the plaintiff seeks to recover $137,656 in taxes that he requested be refunded on his amended 2013 return, as well as $189,329.96 in additional income taxes and penalties that were assessed

and paid after he filed the 2013 amended return.[1]  For the 2014 tax year, the plaintiff seeks to recover $1,588,653 in taxes that he requested be refunded on his 2014 amended return.

The plaintiff filed his original 2013 and 2014 income tax returns, Forms 1040, on October 23, 2014, and October 13, 2015, respectively.  As with all Forms 1040, Mr. Dixon's 2013 and 2014 Forms 1040 provided a space to "Sign Here," recited a declaration that the signature was under penalties of perjury and included separate spaces for the taxpayer and tax preparer to sign:[2]



(ECF 25-4 at 3 (Mr. Dixon's 2013 Form 1040).)[3]  As reflected in this image, Mr. Dixon signed both his 2013 and 2014 returns under penalties of perjury.

In 2016, the plaintiff alleges that he contracted with John Castro to serve as his "tax representative."  Mr. Castro filed an IRS Form SS-4, Application for Employer Identification Number ("EIN"), requesting an EIN for the Dixon Advisory Group Pty Ltd. on Mr. Dixon's behalf.  Mr. Dixon did not sign the Form SS-4; only Mr. Castro did.

In 2017, Mr. Castro submitted an IRS Form 2848, Power of Attorney and Declaration of Representative, that the plaintiff argues gave Mr. Castro authority to represent Mr. Dixon before

---

[1] Mr. Dixon's amended 2013 and 2014 tax returns requested a refund and constituted a claim for refund.  These submissions are referred to as "amended returns" or "refund claims" throughout.

[2] The 2013 version of IRS Form 1040 is available at https://www.irs.gov/pub/irs-prior/f1040--2013.pdf.  The 2014 version is available at https://www.irs.gov/pub/irs-prior/f1040--2014.pdf.
The declaration provides:

> Under penalties of perjury, I declare that I have examined this
> return and accompanying schedules and statements, and to the best
> of my knowledge and belief, they are true, correct, and complete.
> Declaration of preparer (other than taxpayer) is based on all
> information of which preparer has any knowledge.

[3] The plaintiff submitted as exhibits file copies of his 2013 and 2014 returns.  (*See* ECF 1-1; ECF 1-2.)  The defendant noted that the plaintiff did not submit signed initial returns for 2013 and 2014 and provided these signed versions to the Court as exhibits.  (*See* ECF 25-3, ECF 25-4.)

the IRS.  The Form 2848 did not authorize Mr. Castro to submit tax returns or amended returns under IRS Forms 1040, 1040NR, 1040A or 1040EZ for Mr. Dixon.  In addition, the boxes on the Form 2848 that would indicate that Mr. Castro was authorized to represent Mr. Dixon to "sign a return" were not checked.  Further, the plaintiff himself never signed the Form 2848, as required on the face of the form—only Mr. Castro signed it.  The Form 2848 was not an effective power of attorney.

Later, in April 2017, Mr. Castro submitted the plaintiff's 2013 amended return seeking a refund of $137,656, and the plaintiff's 2014 amended return seeking a refund of $1,588,653.  Both amended returns were signed illegibly by Mr. Castro, a fact acknowledged by the plaintiff.  Mr. Dixon did not sign either amended return.  No power-of-attorney form accompanied the amended returns.  Just as with the initial returns, the amended returns for 2013 and 2014, filed on Form 1040X, provided a space to "Sign Here," recited a declaration that the signature was under penalties of perjury and included separate spaces for the taxpayer and tax preparer to sign:[4]



(ECF 25-1 at 4 (Mr. Dixon's 2013 amended return).)  As reflected by this image, Mr. Castro signed Mr. Dixon's amended 2013 and 2014 returns.

Four months later, based on the amended 2013 return, the IRS assessed additional taxes against Mr. Dixon for the 2013 tax year, seeking $161,447 (plus $19,609.56 in interest) and a failure-to-pay penalty in the amount of $6,429.65 (plus $4,785.35 in interest).  Mr. Dixon fully paid these additional amounts for the 2013 tax year when he submitted his 2017 taxes, and the IRS applied an overpayment credit in the amount of $192,271.56 to the plaintiff's 2013

---

[4] The 2013 version of IRS Form 1040X, which was also effective in 2014, is available https://www.irs.gov/pub/irs-prior/f1040x--2014.pdf.  The declaration provides:

> Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete.  Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

outstanding income tax liability.  Mr. Dixon has not filed an administrative claim for a refund of the additional amounts assessed and paid for the 2013 tax year.

In May 2018, the IRS initiated an audit of the plaintiff's 2014 tax return.  The IRS auditor, Anton Pukhalenko, issued an Information Document Request ("IDR") to Mr. Dixon for additional documents concerning the 2014 tax year.  Mr. Castro responded to the IDR twice; in May 2018, he provided Mr. Dixon's 2013 amended tax return to Mr. Pukhalenko, and in July 2018, he submitted arguments challenging the IRS's authority to conduct the audit.

## B.    Procedural History

As noted, Mr. Dixon filed his refund claims with his 2013 and 2014 amended tax returns in April 2017.  After the IRS responded to Mr. Dixon's amended 2013 refund claim with the assessment, and Mr. Dixon paid the additional taxes required of him, Mr. Dixon never filed another refund claim for that additional assessment.  The IRS has never responded to Mr. Dixon's 2014 refund claim, and nothing in the record indicates that the audit of his 2014 amended return has closed.

Mr. Dixon filed this lawsuit in February 2019 and amended his complaint in July 2019.  The IRS filed a motion to dismiss, to which the plaintiff responded in opposition.  This Court heard arguments on February 6, 2020.

# II.    THE DEFENDANT'S MOTION TO DISMISS

## A.    Jurisdiction and Standard of Review

This Court possesses jurisdiction over tax refund claims when a plaintiff has "duly filed" a refund claim "according to the provisions of law in that regard, and the regulations of the [IRS] established in pursuance thereof[,]" 26 U.S.C. § 7422(a), and waited at least six months without a decision from the IRS, 26 U.S.C. § 6532(a)(1).

The government has moved to dismiss the Amended Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC").  In such cases, to determine whether subject-matter jurisdiction exists, the Court accepts "as true all undisputed facts asserted in the plaintiff's complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  When a plaintiff's jurisdictional facts are challenged, however, only those factual allegations that the government does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).  In evaluating such a challenge, the Court is not "restricted to the face of the pleadings" in resolving disputed jurisdictional facts.  The Court may review evidence outside the pleadings. *Id.*  If the Court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the Court to dismiss the claim.

B.      Analysis

1.      Parties' Arguments

The IRS argues that this Court lacks subject-matter jurisdiction over Mr. Dixon's suit because Mr. Dixon failed to satisfy the jurisdictional requirement of duly filing his amended returns for his refund claims for both 2013 and 2014.  In support of its argument, the IRS notes that Mr. Dixon did not sign his amended returns under penalties of perjury, and Mr. Castro, who did sign the forms, did not submit a signed power of attorney or other notice of his status as a fiduciary at the time he filed the amended returns.  The relevant statuteS and regulation require either the taxpayer's signature under penalties of perjury or an accompanying signed power of attorney if the taxpayer does not personally sign the form in order for a tax return to be "duly filed."  Thus, the IRS argues, Mr. Dixon's amended tax returns and the refund claims made in them were not "duly filed" and are invalid.  In addition, the IRS argues that after the IRS issued a quick claim against Mr. Dixon for 2013, Mr. Dixon did not file a separate refund claim for that $189,329.96, so he has not "duly filed" a refund claim for that additional assessment, as required for jurisdiction at this court.

Mr. Dixon counters that the regulation requiring taxpayers' signatures on a tax return or a power of attorney is not valid.  Alternatively, Mr. Dixon argues that Mr. Castro's signature under penalties of perjury satisfies the jurisdictional requirement because he was Mr. Dixon's authorized tax representative.  Further, Mr. Dixon argues that the IRS waived its ability to object to Mr. Castro's signature because the IRS corresponded with Mr. Castro during its audit of Mr. Dixon's 2014 tax refund claim.

The Court agrees that it lacks jurisdiction over Mr. Dixon's complaint because Mr. Dixon did not sign, and thus did not duly file, his 2013 and 2014 amended returns.

2.      Regulatory Compliance

The defendant argues that this case must be dismissed because Mr. Dixon's refund claims were not duly filed; that is, Mr. Dixon did not sign his own refund claims and did not submit a valid power of attorney or other notice of representation with his returns signed by Mr. Castro.  The Court agrees.

For a claim to be valid and duly filed, the governing regulation requires that the claim's "statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury."  26 C.F.R. § 301.6402-2(b)(1).  The IRS's regulation requires that taxpayers submit their returns, amended returns and refund claims in accordance with the requirements listed on each type of form.  *See* 26 C.F.R. § 301.6402-2(a)(2) ("[I]f a taxpayer is required to file a claim for credit or refund using a particular form, then the claim, together with appropriate supporting evidence, shall be filed in a manner consistent with such form, form instructions, publications, or other guidance found on the IRS.gov Web site."); 26 C.F.R. §§ 301.6402-2(c), 301.6402-3 (identifying Form 1040X as the required form for an amended return).  Form 1040X requires the taxpayer to sign under penalties of perjury that the amount claimed for refund is correct.  (*See, e.g.*, ECF 25-1 at 3 (Mr. Dixon's 1040X).)  Taxpayers may authorize, through a power of attorney or other means, fiduciaries to sign and submit returns or

refund claims on their behalf.  26 C.F.R. § 301.6402-2(e).  Any return or refund claim submitted by a fiduciary, however, must have attached a valid power of attorney, such as a Form 2848.  *Id.*

Here, Mr. Dixon's refund claim turns on the plain language of 26 C.F.R. § 301.6402-2(e). That regulation provides that a power of attorney or other proof of representative capacity must accompany any return or refund claim signed by an agent of the taxpayer.  *Id.*  When Mr. Dixon's agent, Mr. Castro, signed Mr. Dixon's refund claim, the claim should have been accompanied by a power-of-attorney form or other letter in order to be valid under the regulation.  Neither Mr. Dixon's 2013 nor 2014 amended return was accompanied by a power of attorney.  Further, even if the Form 2848, purporting to give Mr. Castro power of attorney to act on Mr. Dixon's behalf, had been properly signed, that form did not grant Mr. Castro the power of attorney to sign tax returns on Mr. Dixon's behalf because the boxes that would authorize him to do so were not checked.

The plaintiff argues that the IRS was on notice that Mr. Castro was Mr. Dixon's agent, and that Mr. Castro acted with apparent authority.  Even if the IRS was on notice, the amended returns did not comply with the plain language of the regulation.  As a result, the refund claim is not valid.

The plaintiff also argues that Mr. Dixon's power of attorney, dated December 27, 2019 (more than two and a half years after Mr. Castro signed the plaintiff's amended returns), satisfies the requirement of 26 C.F.R. § 301.6402-2(e).  It does not.  "[T]he jurisdiction of the court depends upon the state of things at the time of the action brought."  *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1331 (Fed. Cir. 2012) (quoting *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004)).  Thus, "later events may not create jurisdiction where none existed at the time of filing."  *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996).  Mr. Dixon's 2013 and 2014 amended returns were submitted without a contemporaneous power of attorney.  The fact that Mr. Castro subsequently received a power of attorney to represent Mr. Dixon before the IRS ten months after the complaint in this case was filed does not make the amended returns "duly filed" and hence cannot create jurisdiction.

Mr. Dixon's refund claims did not comply with the IRS's requirements that every tax return be signed under penalties of perjury by either the taxpayer or his agent, authorized by a power of attorney, and any such power-of-attorney form be submitted with the refund claim to which it applies.  Because compliance with the IRS's regulatory filing requirements is jurisdictional, the Court lacks subject-matter jurisdiction over Mr. Dixon's claims.

### 3.    Applicability and Validity of Tax Regulations

The plaintiff argues that the regulation at issue, 26 C.F.R. § 301.6402-2, is either inapplicable or invalid.  First, the plaintiff argues the regulation is inapplicable because it allows anyone to sign a tax return under penalties of perjury.  Second, the plaintiff argues that the regulation is invalid because the statutes under which the regulation was promulgated are unambiguous, so no regulations were needed, and the statutes permit Mr. Castro to sign the returns.  The Court rejects both arguments.

### a.    Inapplicability

The plaintiff's first argument relies on a misreading of *Kisor v. Wilkie*, -- U.S. --, 139 S. Ct. 2400 (2019).  In *Kisor*, the Supreme Court held that courts will only defer to an agency's reasonable interpretation of its own genuinely ambiguous regulations after exhausting all "traditional tools" of interpretation, so long as the "character and context of the agency interpretation entitles it to controlling weight."  *Id.* at 2414-16.

The regulation at issue here, 26 C.F.R. § 301.6402, is not ambiguous.  *See Kisor*, 139 S. Ct. at 2415 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)) (courts must apply the "'traditional tools' of construction[,]" including the text and structure, to determine whether a regulation is ambiguous).  The regulation requires *the taxpayer* to submit a claim on a specific form and in accordance with that form's requirements. 26 C.F.R. § 301.6402-2(a), (c).  The form must be signed under penalties of perjury.  26 C.F.R. § 301.6402-2(b).  The regulation allows for a person other than the taxpayer to sign under penalties of perjury if proof of the authority to represent the taxpayer accompanies the form.  26 C.F.R. § 301.6402-2(e).  On its face, the regulation is clear.  The Court merely has to apply the regulation. No interpretation is needed, and no deference to the IRS's interpretation is given.  The plaintiff's interpretation of the regulation, which would allow anyone to sign under penalties of perjury, is inconsistent with the plain text of the regulation and the law.[5]

### b.    Invalidity

There is similarly no merit in the plaintiff's argument that the statutes authorizing the regulation are unambiguous, so no regulation is required.  Under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984), an agency's regulation

---

[5] The plaintiff's interpretation of the regulation is also inconsistent with its purpose.  The IRS requires taxpayers (or their representatives designated in accordance with the regulation) to sign under penalties of perjury.  This requirement enables the IRS to enforce directly against a rogue taxpayer.  Tax preparers, unlike taxpayers, only have the information given to them by the taxpayer.  *See, e.g.*, *United States v. Beverley*, 775 Fed. App'x. 468, 472 (11th Cir. 2019) (acknowledging that taxpayer purposefully submitted incomplete and false information to tax preparer).  Tax preparers may not be able to be held liable for perjury; they are liable for aiding and abetting fraud.  *See* 26 U.S.C. §§ 7206(1) (criminal liability for taxpayers who make false statements); 7206(2) (criminal liability for tax preparers for aiding or assisting the preparation of a false or fraudulent document); *see also United States v. Ray*, 899 F.3d 852, 863 n.4 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1206 (2019) ("And fraudulently preparing one's own personal tax returns is legally and factually distinct from preparing fraudulent tax returns for others. *Compare* 18 U.S.C. § 371 (prohibiting conspiracy to defraud United States), *and* 26 U.S.C. § 7206(2) (prohibiting aiding and abetting fraud), *with* § 7206(1) (prohibiting making false declaration under penalties of perjury).").

interpreting a statute is not subject to deference when that statute is unambiguous, or when the regulation is not "based on a permissible construction of the statute[.]"

The statutes at issue, 26 U.S.C. §§ 6011, 6061, 6065, 6402 and 7422, *require* the IRS to issue regulations governing the requirements of a return, including the signatures on returns and claims for tax refunds.[6]  These statutes require the taxpayer personally to sign every return or other document required to be filed with the IRS, unless a regulation allows otherwise.  *See, e.g.*, 26 U.S.C. § 6065 ("Except as otherwise provided by the Secretary . . . , any return, declaration, statement or other document required to be made . . . shall . . . be verified by a written declaration that it was made under the penalties of perjury."); 6061(a) ("[A]ny return, statement or other document required to be made . . .  shall be signed in accordance with forms or regulations prescribed by the Secretary."); § 6011 ("[A]ny person made liable for any tax imposed by this title, or with respect to the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary.  Every person required to make a return or statement shall include therein the information required by such forms or regulations."); § 7422 (no suit or proceeding shall be maintained unless a "claim for refund . . . has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.").  The regulation implementing these statutes, 26 C.F.R. § 301.6402-2, further clarifies the signature requirement by allowing either the taxpayer or his or her representative, with a power of attorney, to sign a tax return.  In the event a return is signed by a person other than the taxpayer, the power of attorney must accompany the return.

In addition, the regulation here is a "workable, simple, and flexible" interpretation of the statute.  *Balestra v. United States*, 803 F.3d 1363, 1371 (Fed. Cir. 2015).  Section 6011 of the Internal Revenue Code requires the taxpayer to sign any return, refund claim, or other document required to be submitted.  26 U.S.C. § 6011.  The other statutes at issue in this case build off section 6011, and, operating together, these statutes impose obligations on the taxpayer personally to sign his own tax returns or have them signed by a representative with power of attorney, accompanied by a valid power of attorney.  *See* 26 U.S.C. §§ 6061, 6065, 6402, 7422.  The regulation, in turn, specifies how the taxpayer will sign returns, refund claims, or other required submissions and allows a representative to sign on the taxpayer's behalf with a contemporaneous documented power-of-attorney.  The Court finds that the IRS's regulation is reasonable and consistent with the statutes, and will not disturb it.

The plaintiff's attacks on the applicability and validity of the IRS's regulation are meritless.

---

[6] Although the plaintiff does not specifically argue that 26 U.S.C. §§ 6065 and 7422 are unambiguous, the Court notes that those statutes, too, form the statutory authority for the regulation at issue in this suit.  These statutes authorize the IRS to issue regulations governing tax returns, including signature requirements.

4. **Waiver**

The plaintiff also argues that the Court has jurisdiction because the IRS waived its ability to object to his failure to comply with the regulation requiring that he sign his amended returns by opening an audit of the 2014 amended return and communicating with Mr. Castro during the course of that audit.  This argument is also meritless.

The IRS may waive compliance with its regulatory requirements by "investigat[ing] the merits of a claim and tak[ing] action upon it."  *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 297 (1945).  A waiver does not occur when the IRS has not taken a final action on a tax return.  *See id.*  Acceptance of a tax return is not a final action from which waiver may follow.  *See Olpin v. Comm'r*, 270 F.3d 1297, 1301 (10th Cir. 2001) (finding that the IRS's "acceptance [of a tax return] cannot cure an invalid return.").  The Supreme Court emphasized that "explicit statutory requirements . . . must be observed and are beyond the dispensing power of Treasury officials."  *Angelus Milling*, 325 U.S. at 296.

The facts of this case are similar to those of *Angelus Milling*.  In both cases, the plaintiffs appeared to file valid tax returns, even though those returns were later determined to be defective.  They then filed suit before the IRS took any final action on their returns.  Here, the IRS processed Mr. Dixon's 2013 and 2014 amended returns that were apparently valid due to the illegible signatures on those returns.  The IRS could not be said to be on notice that these returns were not valid due to the illegible signatures.  The IRS then began auditing one of the amended returns and requested relevant documents.  The IRS did not conclude its audit before the plaintiff filed this suit.  That the IRS did not determine that Mr. Dixon's tax returns were invalid until after the suit commenced does not create a waiver.  The waiver doctrine is not available just because "somewhere under the [IRS] Commissioner's roof is the information which might enable him to" determine whether a refund is valid.  *Angelus Milling*, 325 U.S. at 299.

Mr. Dixon's waiver argument fails.  The Court lacks jurisdiction to consider his claims.

## III.   CONCLUSION

Because Mr. Dixon neither personally signed nor submitted a valid power of attorney for his preparer to sign his 2013 and 2014 amended returns, this Court lacks jurisdiction over his claim.  Therefore, the plaintiff's complaint must be dismissed.

The Court will issue an order in accordance with this decision.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**